IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHEVRON INTELLECTUAL PROPERTY LLC, a Delaware Limited Liability Company and CHEVRON U.S.A. INC., a Pennsylvania Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>IRAKLIS KOTZABALDIRIS and PLEASANT STREET STAR K,<br><br>Defendants. | Civil Action No. 1:10-cv-11180-PBS |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**

## TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................ 1

LEGAL STANDARD ...................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

    Counterclaim I ............................................................................................................ 5

    Counterclaims II and III .............................................................................................. 7

    Counterclaim IV ........................................................................................................ 8

    Counterclaim V .......................................................................................................... 9

    Counterclaims VI, VII, VIII ...................................................................................... 10

CONCLUSION .............................................................................................................. 12

CC 2323352v1

### TABLE OF AUTHORITIES

Page(s)

CASES

*Agis v. Howard Johnson Co.,*
   371 Mass. 140 (1976) .......................................................................................5

*Ahmed v. Rosenblatt,*
   118 F.3d 886 (1st Cir. 1997)..........................................................................4

*Ashcroft v. Iqbal,*
   --- U.S. ----, ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ......................3, 4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)............................3, 4

*Chiang v. Skeirik,*
   582 F.3d 238 (1st Cir. 2009).......................................................................3, 4

*Correllas v. Viveiros,*
   410 Mass. 314, 572 N.E.2d 7 (1991) ............................................................9

*Davidson v. Cao,*
   211 F.Supp.2d 264 (D.Mass. 2002) ............................................................10

*Díaz- Rivera v. Rivera-Rodríguez,*
   377 F.3d 119 (1st Cir. 2004)..........................................................................4

*Eyal v. Helen Broadcasting Corp.,*
   411 Mass. 426 (1991) ..................................................................................10

*Gagliardi v. Sullivan,*
   513 F.3d 301 (1st Cir.2008)...........................................................................3

*Haines v. Kerner,*
   404 U.S. 519, 92 S.Ct. 594 (1972).................................................................4

*Law Office of Alfred Paul Farese, Jr. v. Floramo,*
   No. 10-AMS-10032, 2010 WL 5093245 (Mass.App.Div. Nov. 24, 2010) ..................8

*Martin v. Heimlich,*
   No. 063527, 2007 WL 2429702 (Mass.Super.Ct. Aug. 9, 2007) ....................6

*McDonald v. Hall,*
   610 F.2d 16 (1st Cir. 1979)..........................................................................12

CC 2323352v1

*Ravnikar v. Bogojavlensky,*
    438 Mass. 627, 782 N.E.2d 508 (2003) ........................................................................10

*Robinson v. Carney,*
    No. 09-11491-RGS, 2010 WL 183760 (D.Mass. Jan. 20, 2010)....................................6

*Rockwell v. Cape Cod Hosp.,*
    26 F.3d 254 (1st Cir.1994) ............................................................................................12

*Seelig v. Harvard Coop. Soc'y,*
    355 Mass. 532, 246 N.E.2d 642 (1969) ..........................................................................9

*Sena v. Commonwealth,*
    417 Mass. 250, 629 N.E.2d 986 (Mass. 1994)................................................................6

*Spencer v. Roche,*
    No. 08-40100-FDS, 2010 WL 4456080 (D.Mass. Nov. 8, 2010)..............................5, 6

*Sriberg v. Raymond,*
    370 Mass. 105, 345 N.E.2d 882 (1976) ........................................................................10

*Taylor v. Swarthwout,*
    445 F.Supp.2d 98 (D.Mass. 2006) ...............................................................................10

**STATUTES**

Lanham Act (15 U.S.C § 1051) ...........................................................................................2

**OTHER AUTHORITIES**

Fed.R.Civ.P. 8(a)(2).......................................................................................................3, 4

Fed. R. Civ. P. 12(b) ....................................................................................1, 3, 6, 7, 9, 10, 12

CC 2323352v1

Plaintiffs Chevron Intellectual Property LLC and Chevron U.S.A. Inc. (collectively, "Chevron" or "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6), submit their memorandum of law in support of their Motion to Dismiss the counterclaims asserted by Defendants Iraklis Kotzabaldiris and Pleasant Street Star K (collectively, "Defendants").

## FACTUAL BACKGROUND

Plaintiff Chevron Intellectual Property LLC is the owner and Chevron U.S.A. Inc. is the primary licensee of a number of federally protected TEXACO trademark registrations comprising of, *inter alia*, the TEXACO and Star-T Design trademarks, and all related word marks, logos, and pump, canopy, and building color designs and patterns that define a TEXACO branded service station. (Doc. No. 1, Pls. Compl., pgs. 3-6, ¶¶ 8-17). The TEXACO mark has been in use since at least as early as 1911 for gasoline, gas station services, and related goods and services. (*Id.* at ¶ 13). Some variation of the Star Design mark has been used in commerce since at least as early as 1903, while the current version of the mark, the Star T Design mark, has been in continuous use since at least as early as 1981. (*Id.* at ¶ 14). Furthermore, the buildings and premises of many authorized TEXACO-branded facilities often have a distinctive and proprietary exterior appearance that is unique to all TEXACO-branded facilities. (*Id.* at ¶ 16). This distinct look is comprised of, among other things, (i) a pattern of a red and black color scheme on the building fascia, including the Star-T Design mark on the fascia, (ii) a rigid weather canopy over the gasoline pumps that is comprised of a black background with a red border along the bottom side of the canopy with the TEXACO and Star-T Design marks on the canopy, (iii) gasoline pumps that display a red and black color combination, and (iv) exterior and interior signage that bear the TEXACO and Star-T Design trademarks.

1

(*Id.* at ¶¶ 15-17).  All of these distinctive elements are federally protected under the aforementioned trademark registrations.  (*Id.*).

Defendant Iraklis Kotzabaldiris is the current owner/operator of defendant Pleasant Street Star K, an automobile and gasoline service station located at 368 Pleasant Road, Belmont, Massachusetts 02478.  (Doc. No. 1 at pg. 2, ¶ 3).  At one time, defendants were a licensed and authorized TEXACO-branded service station that sold authentic TEXACO brand gasoline and related products and had permission to display TEXACO marks.  (*Id.* at pg. 6, ¶ 18).  However, the contract authorizing such use of TEXACO-branded products was terminated years ago and, as a result, defendants are no longer authorized or permitted to use any federally protected TEXACO trademarks or service marks at this service station.  (*Id.*).  Upon the contract's termination, defendants were required to cease using or displaying all TEXACO trademarks and service marks, and remove them from their facility.  (*Id.*).

Currently, defendants continue to operate their facility while displaying and using TEXACO's trademark, Star-T Design mark, and exterior trade dress without authorization.  (*Id.* ¶¶ 22-29).  Despite Plaintiffs' repeated requests, defendants have refused to remove these marks and distinctive exterior trade dress from their service station.  (*Id.* at ¶¶ 18-21).  On July 14, 2010, Chevron filed the above-captioned lawsuit for federal trademark counterfeiting, trademark infringement, trademark dilution, and unfair competition under the Lanham Act (15 U.S.C § 1051, et seq.); and for unfair competition, unfair trade practices, and dilution under Massachusetts statutory and common law.  (*Id.*).  On August 10, 2010, defendants, proceeding pro se in this matter,

filed their original Answer.  (Doc. No. 7).  On November 9, 2010, defendants filed an

Amended Answer, which asserts various counterclaims against Chevron.  (Doc. No. 9).

## LEGAL STANDARD

Under Fed.R.Civ.P. 8(a)(2), a pleading must contain a "short and plain statement

of the claim showing that the pleader is entitled to relief."  A pleading that offers "labels

and conclusions" or "a formulaic recitation of the elements of a cause of action will not

do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929

(2007).  To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a litigant must set

forth allegations that "state a claim to relief that is plausible on its face."  *Twombly*, 550

U.S. at 570, 127 S.Ct. 1955.  "A claim has facial plausibility when the [litigant] pleads

factual content that allows the court to draw the reasonable inference that the [opposing

party] is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct.

1937, 1949, 173 L.Ed.2d 868 (2009).  It is imperative that a litigant provide a factual

basis to support their allegations; merely listing the elements of a cause of action or

claiming injury alone are insufficient.  *Chiang v. Skeirik*, 582 F.3d 238, 244 (1st Cir.

2009) ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.") (internal citations omitted);  *Iqbal*, 129 S.Ct. at

1949 (the pleading standard "demands more than unadorned, the-defendant-unlawfully-

harmed-me accusations.").  Dismissal is appropriate if the complaint fails to set forth

"factual allegations, either direct or inferential, respecting each material element

necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*,

513 F.3d 301, 305 (1st Cir.2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de

Melecio*, 406 F.3d 1, 6 (1st Cir.2005)).

CC 2323352v1

# ARGUMENT

Even under the most generous reading, the counterclaims asserted by defendants in their Amended Answer (*see* Doc. No. 9) fail to satisfy the minimum pleading standards required to state cognizable causes of action as set forth by the Supreme Court in *Twombly* and *Iqbal*. Defendants allege that their "health and business suffered substantial (sic) losses as a result of Chevron's hostile actions[.]" The "hostile actions" appear to be: (1) Chevron's multiple requests that defendants remove all signage from their facility containing Texaco trademarks and/or the Star T design marks or displaying Texaco's distinctive exterior trade dress or similar trade dress creating a strong risk of consumer confusion, and (2) the subsequent filing of this lawsuit as a result of defendants' repeated refusals to do so.

Although a certain leniency is afforded to a pro se litigant and their pleadings should be held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594 (1972), there are still threshold standards nonetheless that must be satisfied. *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997) ("[P]ro se status does not insulate a party from complying with procedural and substantive law."); *Díaz- Rivera v. Rivera-Rodríguez*, 377 F.3d 119, 123 (1st Cir. 2004) (finding that although "the requirements of Rule 8(a)(2) are minimal ... 'minimal requirements are not tantamount to nonexistent requirements.'") (internal citations omitted).

For each counterclaim, defendants have failed to plead even cursory elements of specific causes of action, which, in and of itself, has been deemed insufficient to overcome a properly supported motion to dismiss. *See Chiang v. Skeirik*, 582 F.3d at 244; *Iqbal*, 129 S.Ct. at 1949. Even considering the policy supporting leniency to a pro

4

se litigant, defendants have failed to plead the requisite and sufficient supporting *facts* to state any claims for relief that are plausible on their face.

To the extent possible, plaintiffs will specifically address each of defendants' Counterclaims in succession:

**Counterclaim I**

1. More than a year and a half Chevron kept threatening us hardly, and as a result of that so long psychological and emotional distress, I was diagnosed with a cancer and had to undergo a surgery. Medical records are available in Exhibit # 3.

Based on a liberal reading of Counterclaim I, it appears defendants may have intended to plead a cause of action for intentional infliction of emotional distress. Simply put, defendants have failed to allege a sufficient factual basis for such a claim. To maintain a cause of action for intentional infliction of emotional distress, a party must establish that: (1) the defendants intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct; (2) the conduct of defendants was extreme and outrageous and beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) the actions of the defendants were the cause of plaintiff's distress; and (4) the emotional distress sustained by plaintiff was severe and of such a nature that no reasonable person could be expected to endure it. *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976) (citing Restmt (Second) of Torts § 46 (1965)); *Spencer v. Roche*, No. 08-40100-FDS, 2010 WL 4456080, *11-12 (D.Mass. Nov. 8, 2010).

Ignoring all other factors except the second, for actions to be considered extreme and outrageous, a party's "conduct must be beyond all bounds of decency and … utterly intolerable in a civilized community. Liability cannot be founded upon mere insults,

5

threats, or annoyances." *Sena v. Commonwealth*, 417 Mass. 250, 264, 629 N.E.2d 986 (Mass. 1994). It appears the gravamen of defendants' claim is that they experienced "psychological and emotional distress" as a result of Chevron's conduct in repeatedly requesting that defendants remove all materials from their property that displayed Texaco's infringing trademarks and/or trade dress without authorization, informing them that a failure to do so would result in potential litigation, and filing the above-captioned lawsuit. As the owner and primary licensee of, *inter alia*, the federally protected Texaco trademark registrations at issue in this case, plaintiffs have every legal right to enforce the full extent of their intellectual property rights. (Doc. No. 1, Pls. Compl., pgs. 8-17). "As matter of law, conduct that is legally required for the enforcement of a legal right cannot fairly be called extreme, outrageous, or intolerable" for purposes of maintaining a claim of intentional infliction of emotional distress. *Martin v. Heimlich*, No. 063527, 2007 WL 2429702, *8 (Mass.Super.Ct. Aug. 9, 2007); *Spencer v. Roche*, 2010 WL 4456080 at 12; *see also Robinson v. Carney*, No. 09-11491-RGS, 2010 WL 183760, *3 (D.Mass. Jan. 20, 2010) (finding that being served with a *criminal* complaint does not create sufficient "emotional distress" so as to maintain a claim for intentional infliction of emotional distress).

Plaintiffs respectfully request this claim be dismissed as a matter of law for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

CC 2323352v1

## Counterclaims II and III

2. The volume of our sales since 2007 has been lowered with $ 40,000.
   This fact is proven by our Tax Return Forms attached in Exhibit # 7 A-B.

   We insist on compensation in amount of $ 40,000.

3. As a direct consequence of Chevron's continuous attacks, we were enforced to deal with many
   Law- related matters, which took us significantly aside from our business conduct and quality of
   Services that we deliver to our customers.
   As a result, we:
       a/  reduced our working time because of the law procedures investigations.
       b/  spend an enormous additional amount of computer time towards legal research.
       c/  reduced the quality of customer services based on frequent interruptions e.g. for
          telephone calls.

   We claim damages in amount of $ 5,000.

Defendants appear to assert the above Counterclaims each as independent causes of action based, again, upon the filing of this lawsuit by Chevron. However, there is no cause of action available under federal or state law for a decrease in sales of a business as a result of potential, threatened, or pending litigation, as alleged in Counterclaim II. Nor is there a cause of action available under federal or state law to a pro se litigant who incurs financial and occupational expenses after undertaking their own defense, as alleged in Counterclaim III. It is important to note that defendants have made the choice to assume their own defense rather than seek any legal representation in this matter. Furthermore, defendants have failed to mention *any* facts apart from being defending against this lawsuit. Even if there were such causes of action available, defendants have failed to properly plead them. For the foregoing reasons, plaintiffs respectfully request that these claims be dismissed as a matter of law for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b).

## Counterclaim IV

4.  The de-branding expenses that we incurred while we were not responsible for them ( according to
    The Branded Sales Agreement from December 01/ 1998, Par.15 A and Par. 22 C.
    The summary of expenses is shown in Exhibit # 6 D-E.

    We ask for $ 3,000 compensation.

In Counterclaim IV, defendants appear to allege a breach of contract claim based upon damages suffered and expenses incurred in the removal or "debranding" of Texaco signage from their property. As an initial matter, there is no contractual relationship that exists (or has ever existed) between Chevron and defendants, especially not a contract that requires Chevron to debrand defendants' facility or financially provide for the same. Further, defendants reference a Branded Sales and Security Agreement, attached as Exhibit 1 to defendants' Amended Complaint (Doc. No. 9, Def. Amended Answer, pgs. 21-22 of 59), and seem to assert that their damages arise from the debranding activities that occurred after this contract's termination, even though they were not allegedly required to do so under the terms of the contract. Even if defendants were able to properly plead this claim as a cause of action for breach of contract, they would be unable to prove any set of facts that would entitle them to relief from Chevron because Chevron was not a party to the attached Branded Sales and Security Agreement. The presence of a contractual relationship is a primary requirement to support a claim for breach of contract. *Law Office of Alfred Paul Farese, Jr. v. Floramo*, No. 10-AMS-10032, 2010 WL 5093245 (Mass.App.Div. Nov. 24, 2010). The contract was negotiated and entered into between defendant Iraklis P. Kotzabaldiris, as buyer, and the Mutual Oil Co., Inc. located at 863 Crescent Street, P.O. Box 486, Brockton, MA 02403, an unrelated third party, as seller, on October 13, 1998. Texaco is simply listed in the contract as the authorized trademark licensor for the service station; it was never a party to this contract.

8

Therefore, any cause of action that defendants may have for a failure to abide by the terms and conditions of the attached Branded Sales and Security Agreement is only actionable against Mutual Oil Co., not Chevron.

For the foregoing reasons, plaintiffs respectfully request that this claim be dismissed as a matter of law for failure to state a claim upon which relief may be granted because defendants can plead no set of facts that would entitle them to relief. *See* Fed. R. Civ. P. 12(b).

## Counterclaim V

5.   As a remedy for all the Chevron's not proven accusations that polluded our good name , we ask for $ 20,000 compensation.

In Counterclaim V, defendants appear to assert a cause of action for defamation stemming from the allegations contained in Chevron's Complaint. As an initial matter, defendants have not properly pled a cause of action for defamation because they have not asserted any of the required elements of such an action, nor have they alleged a sufficient factual basis to support such a claim aside from a single sentence. Nonetheless, even ignoring such deficiencies, this claim should be dismissed as a matter of law because defendants would be unable to prove any set of facts that would entitle them to relief due to the absolute litigation privilege. Under Massachusetts law, statements made in pleadings or otherwise in the course of a judicial proceeding by participants thereof are absolutely privileged from liability and cannot support a claim for defamation, *even if* uttered with malice or in bad faith. *Seelig v. Harvard Coop. Soc'y*, 355 Mass. 532, 538, 246 N.E.2d 642 (1969) (emphasis added); *Correllas v. Viveiros*, 410 Mass. 314, 319, 572 N.E.2d 7 (1991).

To the extent defendants allege that Chevron's pre-filing correspondence with them "polluted [their] good name," all correspondence was exchanged between plaintiffs and defendants directly; there was no publication or statement(s) made to a third party concerning defendants, which is a required element for defamation. *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629, 782 N.E.2d 508 (2003); *Eyal v. Helen Broadcasting Corp.*, 411 Mass. 426, 430-33 (1991). Nonetheless, the absolute litigation privilege extends further to include statements made "in the institution or conduct of litigation or . . . other communications ***preliminary*** to the litigation." *Sriberg v. Raymond*, 370 Mass. 105, 109, 345 N.E.2d 882, 884 (1976); *Taylor v. Swarthwout*, 445 F.Supp.2d 98, 102 (D.Mass. 2006) (emphasis added). The privilege "rests on the policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." *Davidson v. Cao*, 211 F.Supp.2d 264, 275 (D.Mass. 2002). Any written or oral statements made by Chevron or its attorneys pertaining to this case prior to its filing or the actual allegations contained in Chevron's Complaint are protected by the absolute litigation privilege and no civil liability can arise from such statements. Plaintiffs respectfully request that this claim be dismissed as a matter of law for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b).

## Counterclaims VI, VII, VIII

6.  Paid fee to attorney - $ 175.00.

7.  For suppplemental law consultations, miscellaneous law services ( telephone,transportation etc.) we ask for $500.

8.  Technical processing time - 300hors. We estimate our labor $ 50/hr. for such a convoluted matter. We ask for $ 15,000 compensation.

10

As for Counterclaim VI, defendants appear to assert this claim as an independent cause of action because they do not identify which counterclaim their demand for reimbursement of attorneys' fees could possibly be associated with.  A demand for attorneys' fees is not a stand-alone, actionable claim and must be plead in association with a substantive cause of action whereby prevailing on the substantive claim would entitle a party to reimbursement of all or part of its attorneys' fees.  Because defendants have not pled even the minimal requirements necessary to support *any* of their other counterclaims, this stand-alone allegation is unsustainable and will be moot upon the dismissal of such counterclaims.  In any event, not only have defendants failed to identify which counterclaim their demand for attorneys' fees is associated with, they have also failed to allege any statutory or legal authority that entitles them to recoup attorneys' fees as part of this claim (or any other counterclaim alleged).

As for Counterclaims VII and VIII, defendants appear to assert these allegations each as independent causes of action based upon the aforementioned pre-filing requests made by Chevron and the subsequent filing of this lawsuit.  However, there are no independent causes of action available under federal or state law for "supplemental law consultations," "miscellaneous law services," or "technical processing time" as a result of potential, threatened or pending litigation.  As stated previously, defendants have made the decision to assume their own defense in this matter rather than seek professional legal representation.  It is reasonable to assume such a decision will implicate that financial and occupational expenses will be incurred, neither of which creates a legal cause of action.

11

For the foregoing reasons, plaintiffs respectfully request that Counterclaim VI be dismissed as a matter of law for failure to state a claim or, alternatively, deemed moot upon the dismissal of all other Counterclaims and that Counterclaims VII and VIII be dismissed as a matter of law for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b).

## CONCLUSION

Although a pro se litigant's pleadings should be liberally interpreted, it is not the responsibility of the Court to "conjure up unpled allegations" to state actionable claims on behalf of a pro se litigant. *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979). This is especially true where a pro se litigant simply cannot prove any set of facts entitling them to relief – as demonstrated above in a number of defendants' counterclaims. *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 255 (1st Cir.1994).

WHEREFORE, for the foregoing reasons, Plaintiffs Chevron Intellectual Property LLC and Chevron U.S.A. Inc. respectfully request that this Court enter an order dismissing all counterclaims asserted by defendants Iraklis Kotzabaldiris and Pleasant Street Star K for failure to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and granting any further relief deemed just and appropriate under the circumstances.

CC 2323352v1

Dated:  January 10, 2011

Respectfully submitted,

CHEVRON INTELLECTUAL PROPERTY, LLC, and CHEVRON U.S.A. INC.,

By their attorneys,

/s/ Sean Carnathan
Sean T. Carnathan (BBO # 636889)
Benjamin S. Kafka (BBO # 640993)
O'Connor Carnathan and Mack LLC
8 New England Executive Park
Suite 310
Burlington, MA 01803
scarnathan@ocmlaw.net
bkafka@ocmlaw.net

Bernadette M. Reilly (*admitted pro hac vice*)
Lathrop & Gage LLP
230 Park Avenue
Suite 1847
New York, NY 10169
(212) 850-6231

Luke Meriwether (*admitted pro hac vice*)
Lathrop & Gage LLP
2345 Grand Boulevard
Kansas City, MO 64108
(816) 460-5312

13

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed by United States Postal Service the document(s) to the following non-CM/ECF participants:

> Iraklis Kotzabaldiris and
> Pleasant Street Star K
> 368 Pleasant Street
> Belmont, MA 02478

/s/ Sean Carnathan
An Attorney for Plaintiff

14